Docket No. 108910.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

_____

TERRY E. READY, Special Adm'r of the Estate of Michael P. Ready, Deceased, Appellant, v. UNITED/GOEDECKE SERVICES, INC., *et al.* (United/Goedecke Services, Inc., Appellee).

*Opinion filed October 21, 2010.*

CHIEF JUSTICE FITZGERALD delivered the judgment of the court, with opinion.

Justices Freeman and Burke concurred in the judgment and opinion.

Justice Kilbride specially concurred, with opinion.

Justice Garman specially concurred, with opinion, joined by Justice Karmeier.

Justice Thomas took no part in the decision.

## OPINION

This case returns to this court for a second time. The issues before us are whether the appellate court followed the instructions of this court on remand and whether its decision on the sole proximate cause issue was correct. For the reasons that follow, we reverse the appellate court.

## BACKGROUND

In 1999, Michael Ready (Michael) was killed in an accident at the power plant where he worked when, during a pipe-refitting project, a scaffolding truss fell eight stories and struck him in the shoulder. His wife, Terry Ready (Terry), as administrator of his estate, filed wrongful-death claims in the circuit court of Cook County against the general contractor on the project, BMW Constructors, Inc. (BMW), and the scaffolding subcontractor on the project, United/Goedecke Services, Inc. (United). Those defendants filed third-party contribution complaints against Michael's employer, Midwest Generation EME, L.L.C. (Midwest), and Terry amended her complaint to add Midwest as a defendant. United filed an affirmative defense, claiming that the accident "was caused either in whole, or in part, by and through the action or inactions of a third party or parties" for which United is not responsible. Terry entered settlement agreements with Midwest and BMW and proceeded to trial against United.

Prior to trial, Terry filed motions *in limine* to exclude evidence regarding the conduct of Midwest and BMW. Regarding Midwest, Terry argued that her good-faith settlement with that company prevented the jury from apportioning fault to it. She further argued that United employees James Talley, Jeffrey Talley, and Troy Burzawa made judicial admissions in their discovery depositions that United was in charge of the project. Regarding BMW, Terry similarly argued again that her good-faith settlement with BMW prevented the jury from apportioning fault to BMW. She further argued that United's expert Ralph Barnett stated in his deposition that an alternative means of lifting the trusses–an external crane that BMW may have been responsible, as general contractor, to provide–was not necessarily less dangerous than the internal crane that was actually used.

In response to Terry's motion about Midwest's conduct, United argued, in part, "the issue of whether [Midwest's] conduct is the sole proximate cause of plaintiff's [decedent's] death is still at issue and paramount in this case." The record does not contain a response to Terry's motion *in limine* about BMW's conduct, but in the hearing on Terry's motions, United indicated that its response would be the same concerning both settling defendants: "In this case there is plenty of evidence that the jury could decide that BMW's or Midwest['s] conduct was the sole proximate cause of Mr. Ready's death, and by

eliminating our ability to bring in the conduct of Midwest *** or BMW you would preclude the defense from making that case and establishing that theory."

The trial court decided that section 2–1117 of the Code of Civil Procedure (735 ILCS 5/2–1117 (West 2002)) does not permit apportionment of fault to settling defendants, making evidence of their conduct irrelevant, but the court also disagreed with United on the sole proximate cause issue, stating:

"I think it's clear that in [United job supervisor] Jim Talley's deposition, he does make admissions that United/Goedecke was in charge of the work.

Now, he also says that Michael Ready or Midwest *** was as much in charge as United was.

And while that may affect one of the other motions in limine, it does not change the fact that Mr. Talley has admitted that United was in charge of the work. And so the argument of the sole proximate cause simply wouldn't be borne out by the evidence."

United filed a motion to reconsider this ruling, arguing almost exclusively that the trial court erred in barring evidence of the settling defendants' conduct under section 2–1117. The final paragraph of the motion stated that the trial court's ruling was incorrect "for a reason unrelated to section 2–1117," namely, "the evidence [of negligence by BMW and Midwest] is relevant to the issue of whether those entities were the sole proximate cause of plaintiff's injuries." At the hearing on this motion, United stated, "[Y]our honor, we feel that you should respectfully reconsider your ruling with regard to not allowing the defendant to introduce and argue to the jury that other parties, such as BMW and [Midwest] are the sole proximate cause of plaintiff's [decedent's] death in this case." The trial court returned to Talley's deposition testimony and denied United's motion to reconsider.

At the end of Terry's case and at the close of the evidence, United moved for a directed verdict, asserting that the negligence of BMW and Midwest was the sole proximate cause of the accident. The trial court denied those motions. United then tendered a sole proximate cause jury instruction–the so-called long form of Illinois Pattern Instructions (Civil) No. 12.04. See Illinois Pattern Jury Instructions,

-3-

Civil, No. 12.04 (2000) (hereinafter IPI Civil (2000) No. 12.04). The trial court declined to use this instruction, stating: "As I had ruled earlier, I think case law prohibits me from admitting evidence of BMW and Midwest's negligence in this case since they have settled in good faith, and so far as I know there *** shouldn't be any evidence in the record of Midwest and BMW's negligence."

The jury returned a verdict in Terry's favor, and the trial court entered judgment on that verdict. In its posttrial motion, United argued that the trial court erred in excluding evidence regarding the conduct of BMW and Midwest as the sole proximate cause of the accident. United also argued that the trial court erred in refusing its sole proximate cause jury instruction. The trial court denied United's posttrial motion. United appealed.

The appellate court affirmed in part and reversed in part. *Ready v. United/Goedecke Services, Inc.*, 367 Ill. App. 3d 272 (2006). The appellate court held that under section 2–1117 a nonsettling defendant's fault should be assessed relative to the fault of all defendants, including those who have settled in good faith. *Ready*, 367 Ill. App. 3d at 278. Consequently, the appellate court further held that Midwest and BMW should have been included on the verdict form for purposes of fault apportionment. *Ready*, 367 Ill. App. 3d at 278. Because it reversed and remanded on the statutory issue, the appellate court did not reach the sole proximate cause issue. *Ready*, 367 Ill. App. 3d at 280.

A plurality of this court reversed the appellate court, holding that section 2–1117 did not permit apportionment of fault to settling defendants. *Ready v. United/Goedecke Services, Inc.*, 232 Ill. 2d 369 (2008) (plurality op.). The plurality opinion was modified on denial of rehearing, and closed with this paragraph:

> "In its petition for rehearing, United argues that this court, in light of its resolution of the section 2–1117 question, should address United's concern that it was deprived of a sole proximate cause defense when the trial court refused its request for an instruction on sole proximate cause. We note that the issue was raised in the appellate court, but that court concluded that, because it was remanding for a new trial, it 'need not now address United's contention.' [*Ready*,] 367 Ill. App. 3d at 279. Because our opinion today reverses the

-4-

appellate court's judgment ordering a new trial, we remand the cause to the appellate court for a decision on United's claim that the jury should have been instructed on sole proximate cause." *Ready*, 232 Ill. 2d at 385.

On remand, the appellate court, in a footnote, initially noted,

"[T]he supreme court's opinion framed the issue that we should address on remand as 'United's concern that it was deprived of a sole proximate cause defense when the trial court refused its request for an instruction on sole proximate cause.' *Ready*, 232 Ill. 2d at 385. After reviewing the briefs submitted to this court in the original appeal, it is abundantly clear that United's sole proximate cause defense argument had two components: the circuit court's exclusion of evidence regarding the conduct of the settling defendants, and the circuit court's refusal to instruct the jury on sole proximate cause. Therefore, we address both of United's arguments regarding its sole proximate cause defense." 393 Ill. App. 3d 56, 57 n.2.

The appellate court then discussed *Nolan v. Weil-McLain*, 233 Ill. 2d 416 (2009), and *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83 (1995), and decided that the trial court abused its discretion in excluding evidence of the settling defendants' conduct. 393 Ill. App. 3d at 58-59. The appellate court remanded for a new trial, adding, "we need not address United's contention that the circuit court erred when it refused United's jury instruction on sole proximate cause." 393 Ill. App. 3d at 60. This court allowed Terry's petition for leave to appeal. 210 Ill. 2d R. 315(a).

## ANALYSIS

The first issue before us is simple: Did the appellate court follow the mandate of this court? We directed the appellate court to decide whether the jury should have been instructed on sole proximate cause, but we also referred to "United's concern that it was deprived of a sole proximate cause defense." That defense included both the jury instruction issue and a related evidentiary issue, namely, whether there was evidence to support a sole proximate cause jury instruction. Resolution of both those issues, then, required the appellate court to

determine whether the trial court erred by excluding such evidence in its ruling on Terry's motions *in limine*. This is exactly what the appellate court did. We turn to the second issue before us: Was the appellate court's decision on the sole proximate cause issue correct?

Like the appellate court, we begin with *Leonardi*. In *Leonardi*, the plaintiff's decedent suffered irreversible brain damage shortly after giving birth and died several years later. The plaintiff filed a lawsuit against the hospital where the decedent received treatment and against several doctors who treated her. The plaintiff settled with one of them, Dr. Tierney, prior to trial. The plaintiff then filed a motion *in limine* seeking to bar evidence regarding the alleged negligence of any person other than the remaining defendants. The trial court denied the motion, and at trial allowed the defendants to question several witnesses regarding Dr. Tierney's conduct. The jury found in favor of the defendants, and the trial court entered judgment on that verdict. The plaintiff appealed, and the appellate court affirmed.

Before this court, the plaintiff argued that the trial court's denial of his motion *in limine* was erroneous, and as a result of that ruling, its decision to instruct the jury on sole proximate cause was also erroneous. We held that the trial court did not err in denying the motion *in limine* (*Leonardi*, 168 Ill. 2d at 95) and further did not err instructing the jury on sole proximate cause (*Leonardi*, 168 Ill. 2d at 101). We stated that " 'an answer which denies that an injury was the result of or caused by the defendant's conduct is sufficient to permit the defendant in support of his position to present evidence that the injury was the result of another cause.' " *Leonardi*, 168 Ill. 2d at 94, quoting *Simpson v. Johnson*, 45 Ill. App. 3d 789, 795 (1977). We later explained, "A defendant has the right not only to rebut evidence tending to show that defendant's acts are negligent and the proximate cause of claimed injuries, but also has the right to endeavor to establish by competent evidence that the conduct of a third person, or some other causative factor, is the sole proximate cause of plaintiff's injuries." *Leonardi*, 168 Ill. 2d at 101. Accord *McDonnell v. McPartlin*, 192 Ill. 2d 505, 520-21 (2000).

Last year, we reiterated that a defendant has a right to introduce evidence that some other person or entity was the sole proximate cause of the plaintiff's injury. *Nolan v. Weil-McLain*, 233 Ill. 2d 416 (2009). In *Nolan*, the plaintiff filed a negligence complaint against

various companies, alleging that her decedent developed asbestos-related cancer after being negligently exposed to certain products over his career. All the defendants except one settled with the plaintiff before trial. The nonsettling defendant filed a motion *in limine*, seeking to present evidence at trial that the sole proximate cause of the decedent's death was his exposure to products made by nonparty entities. The plaintiff filed her own motion *in limine*, seeking to bar such evidence. The trial court allowed the plaintiff's motion, and ultimately entered judgment on the jury's verdict in favor of the plaintiff. The defendant appealed, and the appellate court affirmed.

We reversed and remanded for a new trial. We held that "our well-settled rules of tort law" provide that "the plaintiff exclusively bears the burden of proof to establish the element of causation through competent evidence, and that a defendant has the right to rebut such evidence and to also establish that the conduct of another causative factor is the sole proximate cause of the injury." *Nolan*, 233 Ill. 2d at 444. Thus, the trial court erred in preventing the nonsettling defendant from presenting evidence in support of its sole proximate cause defense. *Nolan*, 233 Ill. 2d at 445.

Like the trial court in *Nolan*, the trial court here erred in excluding evidence that would have supported the defendant's sole proximate cause defense. United was entitled to present evidence to support a sole proximate cause jury instruction, and the question becomes whether that evidence would have entitled United to such an instruction. "Instructions convey the legal rules applicable to the evidence presented at trial and thus guide the jury's deliberations toward a proper verdict." *People v. Mohr*, 228 Ill. 2d 53, 65 (2008), citing *People v. Hudson*, 222 Ill. 2d 392, 399 (2006). There must be some evidence in the record to justify an instruction, and the second paragraph of IPI Civil (2000) No. 12.04 should be given where there is evidence, albeit slight and unpersuasive, tending to show that the sole proximate cause of the accident was the conduct of a party other than the defendant. *Leonardi*, 168 Ill. 2d at 101.

Regarding BMW, United indicates that the evidence excluded by the trial court would have shown that BMW should have provided an external crane to lift the scaffolding and that such a crane would have eliminated the need for Michael to work on the project and, thus, would have prevented the accident. Regarding Midwest, United

indicates that the evidence excluded by the trial court would have shown that Midwest forced United to accept additional workers on the project, including the tugger operator and Michael, who had little or no rigging experience; decided how the signaling would be done and who would do it; and failed to abide by its own safety manual. This evidence would have tended to show that the settling defendants' conduct was the sole proximate cause of the accident, and Michael's death, and the trial court erred in excluding it and refusing to give the second paragraph of IPI Civil (2000) No. 12.04.

Having decided that the trial court committed an error, we must decide whether that error was of sufficient magnitude to require a new trial, that is, whether the error was "harmless." See *Nolan*, 233 Ill. 2d at 445. We conclude that it was, and that even a properly instructed jury would not have reached a different verdict because there was significant evidence that United was a proximate cause of the accident.

The subcontract stated, "Crane and Operator to be furnished by [BMW] as United/Goedecke requires," but the record does not show that United ever requested one. In fact, during the *in limine* conference United conceded that there was "no evidence either way." In a discovery deposition, Jeffrey Talley (Jeffrey), United's construction manager for the project, testified that BMW told him in a bid meeting and during a walk around the job site that it would provide an external crane. At trial, Terry called Jeffrey as her first witness. When asked on cross-examination by United's attorney whether there were discussions between United and BMW as to how the scaffolding would be lifted, Jeffrey answered, "We were supposed to use a crane." Pursuant to its ruling on Terry's motion *in limine*, the trial court sustained an objection and struck this testimony, but allowed it to stand as an offer of proof.

Terry also called Jeffrey's brother James Talley, United's job supervisor on the project, as a witness. On direct examination, James testified that he walked around the factory with Jeffrey. James recalled walking by an internal crane or tugger, and he stated he and Jeffrey mentioned the "possibility we could use that [tugger] being the [external] crane wasn't on site yet." James stated that Jeffrey ordered him to check into that possibility because it was the only logical way of lifting the trusses. James added that the "original plan" was to use

a crane, but the crane was not available, so they "looked at alternative options" for raising the trusses.

At trial, Anthony Panega, a Midwest employee, testified that Midwest had a rule prohibiting its employees from standing under material or machinery being lifted by a crane unless their work required it. United attempted to introduce Midwest's safety manual containing this rule into evidence. The trial court barred it, and United made the manual part of an offer of proof.

James agreed that it was his responsibility as United's safety representative to ensure that United's employees and any other persons assisting them complied with United's safety manual. James further agreed that it was his responsibility, with respect to the scaffolding work, to supply a safe working environment for United's employees and any other persons assisting them. James testified that a Midwest employee operated the tugger, and Michael did the signaling from the tugger bay, but only after a "safety meeting" with James. According to James, Michael learned of United's plan to lift the trusses, and they reached an understanding about how the work would be done. But the import of James' trial testimony was that United indeed remained in charge of the scaffolding work, even if United collaborated with Midwest employees on some aspects of how to accomplish it. James even stated that he could have ordered the work done in a different, safer manner.

The work was done pursuant to a plan that James devised with Jeffrey. According to James, Jeffrey chose not only the materials for this job, but also the manner in which they would be rigged and elevated. James stated that on the day before the scaffolding work began, he and his brother walked through the factory. They discussed where the scaffolding would be built and different ways to build it. James stated that United did not control who operated the tugger, but agreed that United controlled everything else, including "signaling and things of that nature." In fact, it was James who decided where the trusses would be tied to the tugger in order to lift them.

On cross-examination, Jeffrey testified that United was not solely responsible for lifting the scaffolding because it had to use Midwest's tugger and three Midwest employees, who were "in control of the lift." Jeffrey, however, agreed that James was responsible for rigging the job and, further, that United was "in charge of" elevating the

scaffolding in a safe manner.

The appellate court was incorrect in stating that if the jury had heard the whole story, it may have reached a different verdict. No reasonable jury would have concluded that United was not a proximate cause of the accident, and if United was a proximate cause, the settling defendants could not have been the sole proximate cause. United may have expected to use an external crane, but the subcontract required it to request one, and the record does not show that it ever did. Additionally, United may have used a Midwest tugger operator and two other Midwest employees, including Michael, for this project, but the record shows that United retained significant control over the work and the safety of the people doing it. We conclude that the trial court's error in refusing to instruct the jury on sole proximate cause was harmless.

CONCLUSION

For the reasons that we have stated, the judgment of the appellate court is reversed, and the trial court's judgment on the jury's verdict is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

JUSTICE THOMAS took no part in the consideration or decision of this case.

JUSTICE KILBRIDE, specially concurring:

I specially concur only because the majority opinion contains a harmless-error discussion of *Nolan v. Weil-McLain*, 233 Ill. 2d 416 (2009), that is inconsistent with my prior position in that small portion of *Nolan*. I acknowledge, however, that the harmless-error ruling in *Nolan* represents this court's holding. Moreover, I completely agree with the majority's conclusion in the present appeal that the trial court's error was harmless and does not require a remand for a new trial. Thus, I specially concur only to explain my current acceptance

of the majority analysis of *Nolan* in light of my prior separate writing.

JUSTICE GARMAN, specially concurring:

I agree with the plurality that United presented insufficient evidence to warrant a jury instruction that the settling defendants were the sole proximate cause of the accident that resulted in Michael Ready's death. I write separately, however, to express my continued disagreement with the holding of this court's decision in *Ready v. United/Goedecke Services, Inc.*, 232 Ill. 2d 369 (2008) (*Ready I*) that section 2–1117 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2–1117) prohibits the jury from apportioning fault to settling defendants. Contrary to the plurality's holding in that case, section 2–1117 unambiguously includes those defendants by providing that "[a]ny defendant whose fault, as determined by the trier of fact, is 25% or greater of the total fault attributable to the plaintiff, *the defendants sued by the plaintiff*, and any third party defendants who could have been sued by the plaintiff, shall be jointly and severally liable for all other damages." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 110, par. 2–1117. As I stated in my dissent in *Ready I*, the plain language of section 2–1117 requires that fault must be allocated among all defendants, settling and nonsettling alike. This reading of the statute comports with and furthers the legislature's "goal of protecting minimally responsible tortfeasors from excessive liability." *Ready*, 232 Ill. 2d at 405 (Garman, J., dissenting, joined by Karmeier, J.).

The *Ready I* plurality's interpretation of the statute rewards settling defendants, no matter the degree of their culpability, and punishes nonsettling defendants. In cases where a defendant may have deep pockets, a plaintiff is encouraged not to settle, knowing that a jury, lacking knowledge of any fault of the settling defendants, may hold the nonsettling defendant solely liable for the injury, absent any comparative negligence on the plaintiff's part. Thus, a nonsettling defendant who may have a lesser degree of fault than the settling defendants ends up paying most of the damages. This is not only unfair to the nonsettling defendant, it may also hurt the plaintiff. If the evidence at trial shows that the only defendant in the case has limited responsibility for the plaintiff's injury, the jury, faced with the necessity of assigning 100% of the fault to someone, may be tempted

-11-

to assign greater fault to the plaintiff. In contrast, if a jury is able to consider the fault of settling defendants, a greater share of the fault may be assigned to those defendants and the degree of the plaintiff's fault reduced.

In the instant case, the jury found United to be 65% liable for the accident and Michael Ready's fault was assessed at 35%. If the jury had been allowed to consider the fault of Midwest and BMW, the degree of Michael's fault may have been reduced because the jury would have had the full picture of the respective liability of all defendants sued by plaintiff. This is not mere speculation. Plaintiff herself apparently believed that BMW had a significant degree of liability for the accident. In her response to BMW's motion for summary judgment, plaintiff argued that BMW had the responsibility under its contract with United to provide an external crane to lift the trusses. It was undisputed that no crane was provided. Plaintiff argued that had BMW provided the external crane, the accident would not have happened. Whatever the actual degree of fault of BMW and Midwest, the jury should have been able to hear evidence on that issue. That was the only way to properly allocate the damages for the accident. But, because of the plurality's interpretation of section 2–1117, the jury only heard part of the story of what happened on the day of Michael's death.

As I stated in my dissent in *Ready I*, the plurality's reading of section 2–1117 upsets the balance struck by the legislature between the goals of full compensation for injured plaintiffs and imposition of liability on defendants commensurate with their fault. That erroneous reading of the statute has had and will continue to have unfortunate consequences for both plaintiffs and defendants.

JUSTICE KARMEIER joins in this special concurrence.

-12-