271 P.3d 1179

**Stephen Mitsuo ADAMS, Individually and as Personal Representative of the Estate of Patricia Marie Adams; Kristin Leilani Bush; and Patrick Keoni Bush, Plaintiffs–Appellants,**

v.

**Robynn M.D. YOKOOJI; Luteru Manu; State of Hawaii, Department of Transportation, Defendants–Appellees,**

and

**John Does 1–10; Jane Does 1–10; Doe Partnerships 1–10; Doe Corporations 1–10; and Doe Governmental Agencies 1–10, Defendants.**

No. 30234.

Intermediate Court of Appeals of Hawai'i.

Jan. 13, 2012.

Vladimir Devens (Meheula & Devens LLP), Gerard A. Jervis, on the briefs, for plaintiffs-appellants.

Robin M. Kishi, Caron M. Inagaki, Deputy Attorneys General, on the briefs, for defendant-appellee State of Hawaii, Department of Transportation.

NAKAMURA, C.J., FOLEY and FUJISE, JJ.

Opinion of the Court by FOLEY, J.

In this case arising out of a personal injury lawsuit, Plaintiffs–Appellants Stephen Mitsuo Adams, Individually and as Personal Representative of the Estate of Patricia Marie Adams (Adams); Kristin Leilani Bush; and Patrick Keoni Bush (collectively, Plaintiffs) assert an interlocutory appeal from the Order Re: Admissibility of Evidence (Order Re: Admissibility) filed December 8, 2009 in the Circuit Court of the First Circuit [1] (circuit court). In the Order Re: Admissibility, the circuit court allowed Defendant–Appellee State of Hawai'i Department of Transportation (DOT) to introduce evidence at trial regarding the lighting of the highway where the accident occurred, but, pursuant to Hawaii Revised Statutes (HRS) § 663–15.5 (Supp. 2010) (HRS § 663–15.5 or Act 300), prohibited DOT from introducing evidence that would point to the actions of any defendants who had previously settled with Plaintiffs as the legal cause of the accident. Plaintiffs had previously settled with Defendants/Cross–Claim Plaintiffs/Cross–Claim Defendants/Appellees Robynn Yokooji (Yokooji) and Luteru Manu (Manu) (collectively, Settled Defendants).

On appeal, Plaintiffs argue that the circuit court's Order Re: Admissibility was "internally inconsistent" because by permitting DOT to introduce its proffered evidence regarding the lighting of the highway, the circuit court in effect was allowing DOT to introduce evidence pointing to the actions of a settled defendant as the legal cause of the accident. Plaintiffs contend the circuit court erred when it interpreted and applied Act 300 to allow a non-settled defendant to introduce evidence at trial that would blame the

1. The Honorable Karl K. Sakamoto presided.

actions of a settled defendant as the cause of the subject accident, when the court had previously ruled that settlement with the settled defendant had been made in "good faith" pursuant to Act 300.[2]

## I.

This case arises out of an accident in which Adams, who was a pedestrian, was struck and killed by a car, driven by Yokooji, on the night of October 28, 2005. Taxi driver Manu had dropped Adams off on Kalanianaole Highway in Kailua. As Adams crossed the highway to catch a bus to her destination in Waimanalo, Yokooji's car struck Adams. Adams died from her injuries the next day.

On August 23, 2007, Plaintiffs filed a civil complaint (Complaint) in circuit court against Manu, Yokooji, and DOT. Specific to DOT, Plaintiffs alleged, in relevant part:

21. [DOT] owed a duty to properly design and maintain the crosswalk and roadway where [Adams] was struck by [Yokooji's] vehicle.

22. [DOT] breached its duties by negligently designing the crosswalk area and/or by failing to provide adequate lighting and/or signage.

23. [DOT]'s negligence was a direct and proximate cause of the injuries and wrongful death of [Adams].

On September 19, 2007, DOT filed an answer, in which DOT denied negligence and causation and asserted, inter alia, the affirmative defense that the other defendants and Adams were negligent and it was their negligence that was the proximate/ legal cause of the accident. DOT also filed a cross-claim for indemnification and contribution against Manu and Yokooji.

Plaintiffs negotiated settlements with Yokooji and Manu. Pursuant to HRS § 663–15.5, the circuit court granted Plaintiffs' respective petitions for determination that the parties had negotiated the settlements in good faith.

On July 16, 2009, Plaintiffs filed their Motion in Limine No. 1 to Preclude Evidence of the Liability of the Settled/Dismissed Defendants (Motion in Limine No. 1). Plaintiffs argued that DOT was precluded, pursuant to HRS § 663–15.5, from introducing evidence to establish or infer liability or negligence of the Settled Defendants. On August 6, 2009, the circuit court held a hearing on the motion. The circuit court discussed *Troyer v. Adams*, 102 Hawai'i 399, 77 P.3d 83 (2003), for the proposition that the Settled Defendants were no longer joint tortfeasors and could not be held liable in tort to Plaintiffs or other defendants at trial. Therefore, reasoned the circuit court, there would be no apportionment of liability issue at trial. Based on that logic, the circuit court stated that DOT "is precluded by Troyer versus Adams from using a empty-chair defense."[3] In further discussion with counsel, the circuit court clarified that "[t]he Court isn't preventing [DOT] from introducing evidence as to duty, breach of duty, or causation."

On September 3, 2009, the circuit court entered an order granting Plaintiffs' Motion in Limine No. 1; the court specifically ordered that DOT "will be precluded at trial from introducing evidence for the sole purpose of establishing the liability of the settled Defendants [Yokooji] and [Manu]."

The bench trial began on September 16, 2009. A dispute immediately arose over whether DOT could introduce evidence regarding lighting. Plaintiffs argued that such evidence violated the circuit court's order prohibiting the empty chair defense. The circuit court allowed DOT to proceed, as long as the intent of the evidence was to establish causation. After DOT finished its opening statement, the circuit court stayed the proceedings to allow Plaintiffs time to file a motion for leave to file an interlocutory appeal to this court on this issue.

2. We do not address that portion of the Order Re: Admissibility in which the circuit court found and ordered that DOT "cannot and will not be permitted to introduce evidence at trial to apportion potential liability among the [S]ettled Defendants," as this issue was not raised on appeal.

3. The "empty-chair defense" is a trial tactic whereby one defendant in a multi-party case attempts to put all the fault on a defendant who settled before trial. *Black's Law Dictionary* 484 (9th ed. 2009).

On September 24, 2009, Plaintiffs filed their Motion for Leave to File Interlocutory Appeal Re: Court's Ruling on Application of Act 300 (Motion to File Interlocutory Appeal). On December 8, 2009, the circuit court entered its Order Re: Admissibility. Also on December 8, 2009, the circuit court granted Plaintiffs' Motion to File Interlocutory Appeal.

On December 10, 2009, Plaintiffs filed their interlocutory appeal to this court.

## II.

### A. Interlocutory Appeal

According to [HRS] § 641–1(b) (1993), interlocutory-appeals "may be allowed by a circuit court *in its discretion* from an order denying a motion to dismiss or from any interlocutory judgment, order, or decree whenever the circuit court may think the same advisable for the speedy termination of litigation before it." (Emphasis added.) Because the circuit court is vested with discretion over the matter, our review is appropriately limited to the question whether the circuit court abused that discretion. *Cf. Tri–S Corp. v. Western World Ins. Co.*, 110 Hawai'i 473, 489, 135 P.3d 82, 98 (2006) ("[T]he circuit court has discretion to grant extensions of time, and thus we review its orders in this regard for abuse of that discretion.").

*Jou v. Dai–Tokyo Royal State Ins. Co.*, 116 Hawai'i 159, 163, 172 P.3d 471, 475 (2007).

### B. Evidentiary Ruling

■ The appellate court applies "two different standards of review in addressing evidentiary issues. Evidentiary rulings are reviewed for abuse of discretion, unless application of the rule admits of only one correct result, in which case review is under the right/wrong standard." *State v. Ortiz*, 91 Hawai'i 181, 189, 981 P.2d 1127, 1135 (1999) (internal quotation marks and citations omitted).

### C. Statutory Interpretation

We review the circuit court's interpretation of a statute *de novo*. *State v. Pacheco*, 96 Hawai'i 83, 94, 26 P.3d 572, 583 (2001). Our statutory construction is guided by established rules:

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. . . .

> In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

> . . . This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it . . . to discover its true meaning." HRS § 1–15(2) (1993).

*Id.* at 94–95, 26 P.3d at 583–84 (some citations and internal quotation marks added and some in original) (brackets in original).

*Troyer*, 102 Hawai'i at 409, 77 P.3d at 93 (quoting *Coon v. City & Cnty. of Honolulu*, 98 Hawai'i 233, 245, 47 P.3d 348, 360 (2002)).

## III.

During Plaintiffs' opening statement, they outlined their plans to offer evidence of DOT'S negligence in its maintenance of lighting, traffic signals, and crosswalk signage in the area of the accident, alleging that DOT'S negligence caused the accident. In particular, Plaintiffs stated that "[i]t was very dark," making it hard for Yakooji to see Adams.

DOT stated in its opening statement its intent to rebut Plaintiffs' contention by producing evidence to show that lighting was not

a cause of the accident, signage or lack of signage was not a cause of the accident, and a traffic signal at the intersection was not warranted. Regarding lighting, DOT stated police photographs would show that all the street lights in the area of the accident were in working order the night of the accident. Plaintiffs objected, arguing that the purpose of such evidence was to show that the lighting was sufficient, which "point[ed] the finger at" Yakooji in violation of the circuit court's order. Plaintiffs argued that "[t]here's no other purpose to show that the lighting was insufficient other than to blame [Yakooji]. She's a settled defendant. You can't do that." After an extended discussion, DOT proceeded with its opening statement, while the circuit court gave Plaintiffs a running objection on the issue of lighting.

When DOT stated it would be calling as a witness Helen Rasay (Rasay), who had been driving on the highway behind Yakooji and had seen Adams crossing the road, Plaintiffs again objected, complaining that this testimony "solely points the finger at" Yokooji by implying that if Rasay had seen Adams, Yokooji should have seen Adams. The circuit court overruled Plaintiffs' objection. DOT then indicated it would present expert testimony regarding "line of sight,"[4] showing that Yokooji "should have been able to see [Adams] when [Adams] was in the left lane before she entered [Yokooji and Rasay's] lane of traffic." Plaintiffs again objected, arguing that

> the purported evidence that [DOT] intends to offer at trial goes to the sole issue of pointing the finger and blaming [Yokooji] for causing this accident. And, again, [DOT] cannot do that under Act 300 under the court's granting of [P]laintiffs' [Motion in Limine No. 1]. It goes for no other purpose.

DOT argued that if it were not permitted to present this evidence, it would not be able to adequately defend itself on the lighting issue. Plaintiffs responded by arguing:

> It is presumed that [Yakooji's] testimony as to why the accident happened that it was dark, that is now a presumption that

the court must accept if anything other than that to show that there was sufficient light that [Yakooji] should have seen [Adams] now blames her. And, that is not allowed under Act 300.

Counsel for both parties then had the following exchange with the circuit court:

[Plaintiffs]: ... [A]s far as the lighting is concerned, [Yokooji] is going to testify it was so dark that I couldn't see [Adams]. That's a given now.

[DOT]: Excuse me, Your Honor. There you have it as to why I should be able to proceed on this issue and why the evidence should come in.

THE COURT: So, if—if someone testifies for plaintiff that it was very dark, you're saying then that opposing side the State cannot come in and say it was very bright.

[Plaintiffs]: Right. Saying it was very dark does not point the finger at [Yokooji]. Saying that it was light, does point the finger at [Yokooji]. That cannot be allowed. That's the difference.

Yes, it's a harsh result but that's the—that was the intent of the legislature under Act 300. It's to encourage settlements. Why do we encourage settlements?

THE COURT: ... [I]t's not an end result of the trial analysis. You know, you're assuming that this court then has to accept as credible that one-one of your witnesses come in to say that it was dark, that I accept that credibility and say it was dark.

[Plaintiffs]: Well,—

THE COURT: There's no opportunity for the opposing side to say it was light.

Now, if lighting had no place in it, why are you calling someone to say it was dark?

[Plaintiffs]: Because that doesn't blame [Yokooji]. They can't bring in evidence that does blame her.

If the court allows that then they are now pointing the finger at the empty chair. And, the court's order filed September 3rd,

---

4. A "human factors engineer" would compare the angle of view of Rasay, who saw Adams, with the angle of view of Yokooji, who did not see Adams.

2009, which granted [P]laintiffs' [Motion in Limine No.1] to preclude evidence of the liability of the settled dismissed defendants, the court further ordered:

That the defendant [DOT], State of Hawaii will be precluded at trial from introducing evidence for the sole purpose of establishing the liability of the [S]ettled [D]efendant[s][.]

THE COURT: Right.

[Plaintiffs]: Which was a proper ruling. So, anything that comes in to say—

THE COURT: It was Yokooji's fault will not be allowed.

[Plaintiffs]: Right, which is what lighting goes to. To say that it was light enough to see [Adams] that now blames [Yokooji]. Otherwise, why is it relevant any more?

Doesn't it just blame [Yokooji] to say that hey, you know what, there was enough light. This other person saw. You should have saw too. It's your fault. You weren't paying attention.

THE COURT: That argument hasn't been made yet.

[Plaintiffs]: But that's what [DOT'S attorney is] saying what they intend to do by offering the evidence she's reciting in her opening.

\* \* \*

[DOT]: As I was saying, [Rasay] saw [Adams].

If [Rasay] could see [Adams] before the accident ..., [Yokooji] should have been able to see [Adams] before striking her.

The evidence because of that will show that lighting was not a cause of this acci-

dent similar line of sight for both drivers and witness, similar lighting.

\* \* \*

So, lighting was not a cause of this accident.

The circuit court's Order Re: Admissibility provided:

IT IS HEREBY ORDERED that Defendant [DOT] is precluded from introducing evidence at trial that attempts to blame the [S]ettled Defendants ( [Yokooji], [Manu] ) as being the legal cause of the subject accident and resulting damages, i.e. evidence that points the finger at the empty chairs of the [S]ettled Defendants, pursuant to [HRS] § 663–15.5 ("Act 300"), *Trover [Troyer] v. Adams*, 102 [Hawai'i] 399, 77 P.3d 83 (S.Ct.2003), and *Doe Parents v. DOE*, 100 [Hawai'i] 34, 87 n. 50, 58 P.3d 545, 598 n. 50 (S.Ct.2002). However, the Court further orders and rules over Plaintiffs' objections, that [DOT] can and will be allowed to introduce evidence relating to the lighting of the highway where the subject accident occurred, ~~even if such evidence points the finger and blames a settled Defendant for being the legal cause of the accident.~~ [DOT] intends to introduce evidence at trial to show that there was sufficient lighting for [S]ettled Defendant [Yokooji] to see pedestrian [Adams] (deceased) crossing the highway, thus, blaming [Yokooji] for causing the subject accident due to her "inattention."

Last, the Court finds and orders that [DOT] cannot and will not be permitted to introduce evidence at trial to apportion potential liability among the [S]ettled Defendants.

(Strikeout in original.)

In 2001, the Hawai'i Legislature passed Act 300, codified as HRS § 663–15.5,[5]

---

5. HRS § 663–15.5 provides in relevant part:

HRS § 663–15.5 Release; joint tortfeasors; co-obligors; good faith settlement. (a) A release, dismissal with or without prejudice, or a covenant not to sue or not to enforce a judgment that is given in good faith under subsection (b) to one or more joint tortfeasors, or to one or more co-obligors who are mutually subject to contribution rights, shall:

(1) Not discharge any other joint tortfeasor or co-obligor not released from liability unless its terms so provide;

(2) Reduce the claims against the other joint tortfeasor or co-obligor not released in the amount stipulated by the release, dismissal, or covenant, or in the amount of the consideration paid for it, whichever is greater; and

(3) Discharge the party to whom it is given from all liability for any contribution to any other joint tortfeasor or co-obligor.

This subsection shall not apply to co-obligors who have expressly agreed in writing to an apportionment of liability for losses or claims among themselves.

to simplify the procedures and reduce the costs associated with claims involving joint tortfeasors by:

(1) Establishing a new joint tortfeasor release statute that includes the right of contribution;

(2) Repealing the existing joint tortfeasor release statute and right of contribution statute; and

(3) Establishing a good faith settlement procedure for joint tortfeasors and co-obligors.

H. Stand. Comm. Rep. No. 1230, in 2001 House Journal, at 1599.

"[T]he term 'joint tortfeasors' means two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." HRS § 663–11 (1993). In the context of multi-party litigation, a good faith settlement reached under HRS § 663–15.5 impacts both settled and non-settled joint tortfeasors:

[A] settlement "given in good faith" shall: (1) not discharge the non-settling joint tortfeasors from liability, unless its terms so provide; but (2) reduce the claims against the non-settling joint tortfeasors in the amount stipulated in the settlement or in the amount of the consideration paid for it, whichever is greater; and (3) discharge the settling tortfeasor from all liability for any contribution to the non-settling joint tortfeasors.

*Troyer*, 102 Hawai'i at 403, 77 P.3d at 87. Thus, pursuant to HRS § 663–15.5(a)(3),

(b) For purposes of subsection (a), any party shall petition the court for a hearing on the issue of good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors, serving notice to all other known joint tortfeasors or co-obligors.

The petition shall indicate the settling parties and, except for a settlement that includes a confidentiality agreement regarding the case or the terms of the settlement, the basis, terms, and settlement amount.

... [A] nonsettling alleged joint tortfeasor or co-obligor may file an objection to contest the good faith of the settlement.... A nonsettling alleged joint tortfeasor or co-obligor asserting a lack of good faith shall have the burden of proof on that issue.

....

DOT, the remaining alleged joint tortfeasor in this case, if found liable, cannot pursue contribution [6] from the Settled Defendants.

 The question before this court is whether a non-settled party may introduce evidence at trial that would point to the settled defendant as the cause of the accident, in spite of the fact that the settled defendant had made a good faith settlement. We conclude that a good faith settlement made pursuant to HRS § 663–15.5 does not preclude a defendant from introducing evidence that it was not the cause of the accident even though this evidence will logically point the finger at someone or something else, including a defendant who settled in good faith.

 It is well-settled that plaintiffs have the burden of proving the elements of a negligence action—duty, breach of duty, causation, and damages. *Takayama v. Kaiser Found. Hosp.*, 82 Hawai'i 486, 498–99, 923 P.2d 903, 915–16 (1996). Regarding causation, an actor's negligent conduct is the

proximate or legal cause ... of harm to another if (a) his [or her] conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his [or her] negligence has resulted in the harm. *Restatement, Torts*, § 431; Prosser on Torts, § 47.

*Mitchell v. Branch*, 45 Haw. 128, 132, 363 P.2d 969, 973 (1961).

(d) A determination by the court that a settlement was made in good faith shall:

(1) Bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor, except those based on a written indemnity agreement; and

(2) Result in a dismissal of all cross-claims filed against the settling joint tortfeasor or co-obligor, except those based on a written indemnity agreement.

6. Contribution can be defined as "[o]ne tortfeasor's right to collect from joint tortfeasors when—and to the extent that—the tortfeasor has paid more than his or her proportionate share to the injured party, the shares being determined as percentages of causal fault." *Black's Law Dictionary* 378 (9th ed. 2009).

*Estate of Klink ex rel. Klink v. State of Hawai'i*, 113 Hawai'i 332, 361, 152 P.3d 504, 533 (2007) (quoting *Taylor–Rice v. State of Hawai'i*, 91 Hawai'i 60, 74, 979 P.2d 1086, 1100 (1999)).

Plaintiffs intend to present evidence at trial that DOT'S negligent acts or omissions brought about the death of Adams. On the other hand, DOT contends it is not a joint tortfeasor and intends to argue that "evidence that something or someone other than [DOT] caused the accident" and this evidence "is relevant to show that [DOT] did not cause the accident." DOT argues that in order to put on a defense, it must be able to introduce evidence regarding the lighting to show that insufficient lighting was not the cause of the accident, logically implying that the driver's inattentiveness, not bad lighting, was the cause. In essence, DOT intends to put forth a general denial that its negligence was a proximate cause of the accident, which will necessarily infer that the accident was the result of some other causative factor.

In *Leonardi v. Loyola University of Chicago*, 168 Ill.2d 83, 212 Ill.Dec. 968, 658 N.E.2d 450 (1995), the decedent suffered irreversible brain damage shortly after giving birth and died several years later. *Id.* at 453–54. Plaintiffs filed suit against the hospital and several physicians. *Id.* at 454. Plaintiffs settled with one defendant before trial, and that defendant was dismissed from the case. *Id.* Before trial, plaintiffs filed a motion in limine seeking to bar the introduction of evidence of alleged negligence of anyone other than the non-settling defendants. *Id.* at 455. The trial court denied the motion and allowed evidence regarding the settled defendant's duties and responsibilities. *Id.* The jury returned a verdict in favor of the remaining defendants, and plaintiffs appealed. *Id.* at 454. On appeal, plaintiffs argued that defendants' general denial of negligence was not enough to raise the sole proximate cause defense, but the Illinois Supreme Court disagreed and reasoned:

> In any negligence action, the plaintiff bears the burden of proving not only duty and breach of duty, but also that defendant proximately caused plaintiff's injury. (*Smith v. Eli Lilly & Co.* (1990), 137 Ill.2d

222, 232, 148 Ill.Dec. 22, 560 N.E.2d 324; see 1 M. Polelle & B. Ottley, Illinois Tort Law § 14.23 (2d ed. 1994).) The element of proximate cause is an element of the *plaintiff's* case. The defendant is not required to plead lack of proximate cause as an affirmative defense. (*Korando v. Uniroyal Goodrich Tire Co.* (1994), 159 Ill.2d 335, 344, 202 Ill.Dec. 284, 637 N.E.2d 1020 (products liability).) Obviously, if there is evidence that negates causation, a defendant should show it. However, in granting the defendant the privilege of going forward, also called the burden of production, the law in no way shifts to the defendant the burden of proof. See *Caley v. Manicke* (1961), 29 Ill.App.2d 323, 328–29, 173 N.E.2d 209, *rev'd on other grounds* (1962), 24 Ill.2d 390, 182 N.E.2d 206; M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 301.4 (6th ed. 1994).

*Id.* at 455. The Illinois Supreme Court upheld the trial court's decision, explaining that

> [a] defendant has the right not only to rebut evidence tending to show that defendant's acts are negligent and the proximate cause of claimed injuries, but also has the right to endeavor to establish by competent evidence that the conduct of a third person, or some other causative factor, is the sole proximate cause of plaintiff's injuries.

*Id.* at 459.

In *Nolan v. Weil–McLain*, 233 Ill.2d 416, 331 Ill.Dec. 140, 910 N.E.2d 549 (2009), plaintiff filed a negligence complaint against several companies, alleging the decedent developed cancer after exposure to asbestos-related products. *Id.* at 550. All the defendants but one settled or were dismissed before trial. *Id.* The trial court "excluded evidence which defendant wished to present to rebut plaintiff's claims and to support [defendant's] sole proximate cause defense." *Id.* at 559. The jury found in favor of plaintiff, and defendant appealed. *Id.* at 554. The appellate court affirmed, *id.*, but the Illinois Supreme Court reversed and remanded for a new trial, finding that it was error to exclude "evidence of alternative causes for decedent's injuries, improperly preventing defendant from supporting its

sole proximate cause defense." *Id.* at 566. The supreme court reiterated that it was a well-settled rule of tort law "that the plaintiff exclusively bears the burden of proof to establish the element of causation through competent evidence, and that a defendant has the right to rebut such evidence and to also establish that the conduct of another causative factor is the sole proximate cause of the injury." *Id.* at 564.

*Ready v. United/Goedecke Services, Inc.,* 238 Ill.2d 582, 345 Ill.Dec. 574, 939 N.E.2d 417 (2010), arose from a construction accident where the decedent was killed during a pipe-refitting project when a scaffolding truss fell eight stories and struck him in the shoulder. *Id.* at 418. Plaintiff settled with the general contractor and the employer and went to trial against the subcontractor. *Id.* Before trial, plaintiff filed motions in limine to exclude evidence regarding the conduct of the settled defendants, arguing, inter alia, that her good-faith settlement prevented the jury from apportioning fault. *Id.* at 418–19. The trial court granted plaintiff's motion to exclude evidence of the settled defendants' negligence, reasoning that the defendants had settled in good faith. *Id.* at 419–20. The jury returned a verdict in favor of plaintiff. *Id.* at 420. On appeal, the Illinois Supreme Court held, pursuant to the *Nolan* and *Leonardi* decisions, that the trial court erred when it excluded evidence to support defendant's sole proximate cause defense. *Id.* at 422–23. The supreme court reiterated its reasoning in *Leonardi* that "an answer which denies that an injury was the result of or caused by the defendant's conduct is sufficient to permit the defendant, in support of its position, to present evidence that the injury was the result of another cause." *Ready,* 345 Ill.Dec. 574, 939 N.E.2d at 421 (quoting *Leonardi,* 212 Ill.Dec. 968, 658 N.E.2d at 455).

Turning to Hawai'i case law, we conclude that neither *Troyer* nor *Doe Parents No. 1 v. State of Hawai'i, Dep't of Educ.,* 100 Hawai'i 34, 58 P.3d 545 (2002), stands for the proposition that DOT is prohibited from putting forth an empty chair defense.

*Troyer* arose out of a malpractice case in which two of the three defendants settled. 102 Hawai'i at 403–04, 77 P.3d at 87–88. Pursuant to HRS § 663-15.5, plaintiff petitioned the court for an order determining that the settlements were made in good faith, thereby barring any other joint tortfeasor from asserting claims against the settled parties for contribution. *Troyer,* 102 Hawai'i at 404–05, 77 P.3d at 88–89. The non-settling defendant objected, contending he was entitled to contribution from the settled defendants. *Id.* at 406–07 & 431, 77 P.3d at 90–91 & 115. *Troyer* provides guidance to the trial court for analyzing whether a settlement was made in good faith, but makes no statement regarding the evidence a non-settling defendant may present in court during trial. The issue in *Troyer* was not whether evidence can be presented during trial as to a non-settling party's liability; rather, the issue was whether the settling parties met the criteria for settling in good faith. *Id.* at 425–26, 77 P.3d at 109–10.

*Doe Parents No. 1* is also inapposite to the instant case. *Doe Parents No. 1* arose out of a case involving a State of Hawai'i Department of Education (DOE) teacher who sexually molested two students. *Id.* at 55, 58 P.3d at 566. The trial court dismissed with prejudice plaintiffs' claims against the teacher. *Id.* at 41, 58 P.3d at 552. The supreme court, in a footnote, explained that because the teacher had been dismissed from the case, he was no longer a joint tortfeasor pursuant to HRS § 663-11 and, as a result, the trial court could not apportion liability pursuant to HRS § 663-10.9. *Doe Parents No. 1,* 100 Hawai'i at 87 n. 50, 58 P.3d at 598 n. 50. *Doe Parents No. 1* does not stand for the proposition that a defendant is prohibited from establishing that someone other than defendant caused the injury.

Adopting the reasoning set forth in the Illinois cases, we conclude DOT is not precluded from introducing evidence that its negligence was not the cause of the accident even though this evidence will logically point the finger at someone or something else as the causative factor.[7]

---

7. However, if DOT is found liable, DOT is pre-

cluded from seeking contribution from the set-

## IV.

We affirm that portion of the Order Re: Admissibility of Evidence filed on December 8, 2009 in the Circuit Court of the First Circuit ordering that DOT may introduce evidence relating to the lighting of the highway. We vacate any portion of the Order Re: Admissibility of Evidence inconsistent with this opinion and remand this case for further proceedings consistent with this opinion.

tled defendants. HRS § 663–15.5(a)(3) (A judgment given in good faith shall "[d]ischarge the party to whom it is given from all liability for any contribution to any other joint tortfeasor or co-obligor.").