# Illinois Official Reports

## Supreme Court

---

### *Antonicelli v. Rodriguez*, 2018 IL 121943

---

| | |
|---|---|
| Caption in Supreme Court: | ANGELA ANTONICELLI, Appellee, v. DANIEL JUAN RODRIGUEZ *et al.* (Karl Browder *et al.*, Appellants). |
| Docket No. | 121943 |
| Filed | February 16, 2018 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Moira S. Johnson, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Francis P. Cuisinier, of Ruberry, Stalmack & Garvey, LLC, of Chicago, for appellants. |
| | Esther Joy Schwartz, David C. Flosi, and Adam Motz, of Stellato & Schwartz, Ltd., of Chicago, for appellee. |
| Justices | JUSTICE KILBRIDE delivered the judgment of the court, with opinion. |
| | Justices Freeman, Burke, and Theis concurred in the judgment and opinion. |
| | Justice Thomas specially concurred, with opinion. |
| | Justice Garman specially concurred, with opinion. |
| | Chief Justice Karmeier dissented, with opinion. |

**OPINION**

¶ 1        At issue in this appeal is whether the circuit court of Cook County erroneously entered a finding of a good-faith settlement agreement under section 2 of the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/2 (West 2012)). This case involves a personal injury action for damages arising out of a motor vehicle accident. The trial court granted a motion filed by defendant Daniel Rodriguez and entered a finding of a good-faith settlement with plaintiff, Angela Antonicelli. The trial court's order included the dismissal of a counterclaim for contribution filed by defendants, Karl Browder, Chicago Tube and Iron Company, and Trillium Staffing, d/b/a Trillium Drivers Solutions. The appellate court affirmed. 2017 IL App (1st) 153532-U. We affirm.

¶ 2                                BACKGROUND

¶ 3        On November 2, 2013, at about 1:30 a.m., plaintiff, Angela Antonicelli, was a passenger in a vehicle traveling eastbound on I-88 near Naperville. Three of the eastbound lanes were closed due to construction. Defendant Karl Browder was operating a semi tractor and trailer on behalf of defendants Chicago Tube and Iron Company and Trillium Staffing, doing business as Trillium Drivers Solutions (hereinafter the Browder defendants), traveling eastbound behind Antonicelli's vehicle.

¶ 4        At the time of the occurrence, defendant Daniel Rodriguez was under the influence of cocaine. While traveling westbound, Rodriguez made an improper U-turn through the median on I-88 and collided with Antonicelli's vehicle, causing it to rotate clockwise. Browder was unable to stop his semi and slammed into the passenger side door of Antonicelli's vehicle. Antonicelli suffered severe permanent injuries.

¶ 5        Rodriguez pled guilty to aggravated driving under the influence of drugs and is currently serving a sentence of seven years of imprisonment. Rodriguez acknowledged he was at fault but claimed he had no recollection of the accident because of severe brain injuries he suffered in the collision.

¶ 6        Antonicelli brought this cause of action alleging the defendants' negligence caused her extensive personal injuries and seeking damages. Antonicelli entered into a settlement with Rodriguez for $20,000, the limit of his insurance coverage. Rodriguez filed a motion for a finding of a good-faith settlement with Antonicelli. Rodriguez indicated to the court that the insurance policy limits are his only material asset and that settlement was contingent on the underinsured motorist insurer's consent to the settlement and release of subrogation rights.

¶ 7        The nonsettling Browder defendants then filed a counterclaim for contribution against Rodriguez. The counterclaim alleged that Rodriguez's conduct was intentional rather than negligent and that his intentional conduct caused the accident and Antonicelli's injuries.

¶ 8        After briefing and oral argument, the trial court granted Rodriguez's petition for a finding of good faith and dismissal. Specifically, the court (i) found the monetary settlement of the insurance policy limit of $20,000 was made in good faith, (ii) dismissed with prejudice Antonicelli's complaint against Rodriguez, (iii) dismissed the nonsettling Browder defendants' counterclaim for contribution as barred by the finding of good faith, and (iv) allowed the nonsettling Browder defendants the right to credit $20,000 against any future judgment in Antonicelli's favor.

¶ 9    The Browder defendants appealed, arguing that Rodriguez acted intentionally in causing the accident and that section 2 of the Contribution Act (740 ILCS 100/2 (2012)) does not permit a finding of a good-faith settlement with an intentional tortfeasor. The Browder defendants also contended that the trial court's finding of good faith was erroneous because it failed to consider their rights under section 2-1117 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1117 (West 2012)), limiting liability of minimally responsible defendants.

¶ 10    The appellate court affirmed, holding that the trial court did not abuse its discretion by basing its decision solely on the negligence allegations of the plaintiff's complaint. The appellate court also concluded that the trial court did not abuse its discretion by failing to consider the rights of the Browder defendants under section 2-1117 of the Code. 2017 IL App (1st) 153532-U. This court allowed the Browder defendants' petition for leave to appeal pursuant to Illinois Supreme Court Rule 315 (eff. Mar. 15, 2016).

¶ 11                                    ANALYSIS

¶ 12    In this appeal, the nonsettling Browder defendants argue that the appellate court erred in affirming the trial court's order granting defendant Rodriguez's petition for a finding of a good-faith settlement agreement with Antonicelli under section 2 of the Contribution Act (740 ILCS 100/2 (West 2012)). Section 2 of the Contribution Act provides:

> "Right of Contribution. (a) Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them.
>
> (b) The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is liable to make contribution beyond his own pro rata share of the common liability.
>
> (c) When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.
>
> (d) The tortfeasor who settles with a claimant pursuant to paragraph (c) is discharged from all liability for any contribution to any other tortfeasor.
>
> (e) A tortfeasor who settles with a claimant pursuant to paragraph (c) is not entitled to recover contribution from another tortfeasor whose liability is not extinguished by the settlement.
>
> (f) Anyone who, by payment, has discharged in full or in part the liability of a tortfeasor and has thereby discharged in full his obligation to the tortfeasor, is subrogated to the tortfeasor's right of contribution. This provision does not affect any right of contribution nor any right of subrogation arising from any other relationship." 740 ILCS 100/2 (West 2012).

¶ 13    This court has recognized that "the Contribution Act seeks to promote two important public policies—the encouragement of settlements and the equitable apportionment of damages among tortfeasors." *Johnson v. United Airlines*, 203 Ill. 2d 121, 135 (2003) (citing *Dubina v. Mesirow Realty Development, Inc.*, 197 Ill. 2d 185, 193-94 (2001), and *In re Guardianship of Babb*, 162 Ill. 2d 153, 171 (1994)). Specifically, the Contribution Act "promotes settlement by providing that a defendant who enters a good-faith settlement with the plaintiff is discharged from any contribution liability to a nonsettling defendant." *BHI Corp. v. Litgen Concrete Cutting & Coring Co.*, 214 Ill. 2d 356, 365 (2005) (citing *Babb*, 162 Ill. 2d at 171). The Contribution Act also ensures equitable apportionment of damages among tortfeasors by creating a right of contribution among defendants and " 'by providing that the amount that the plaintiff recovers on a claim against any other nonsettling tortfeasors will be reduced or set off by the amount stated in the settlement agreement.' " *BHI Corp.*, 214 Ill. 2d at 365 (quoting *Babb*, 162 Ill. 2d at 171, citing 740 ILCS 100/2(b), (c) (West 1992)).

¶ 14    A settling joint tortfeasor who settles in good faith with the injured party is discharged from contribution liability and may not recover contribution from a nonsettling tortfeasor. 740 ILCS 100/2(d), (e) (West 2012). This court has consistently recognized that the only limitation the Contribution Act places on a settlement is that the settlement be in "good faith." 740 ILCS 100/2(c) (West 2012); *Johnson*, 203 Ill. 2d at 128; *Dubina*, 197 Ill. 2d at 191; *Babb*, 162 Ill. 2d at 161.

¶ 15    The Browder defendants argue that the trial and appellate courts erred in refusing to address the issue of whether an "intentional tortfeasor" can enter into a good-faith settlement under section 2 of the Contribution Act. The Browder defendants contend that Rodriguez acted intentionally in causing the accident because he was intoxicated at the time. According to the Browder defendants, the trial court did not have authority under the Contribution Act to make a good-faith settlement finding because Rodriguez was an "intentional tortfeasor."

¶ 16    The Browder defendants cite no authority whatsoever for the proposition that an accident caused by an intoxicated driver constitutes a *de facto* "intentional tort." Indeed, our research has uncovered no case in any federal or state court that has made such a holding. Moreover, the Browder defendants admit that their sole purpose for objecting to this settlement is to keep Rodriguez on the jury verdict form for an apportionment of joint and several liability under section 2-1117 of the Code (735 ILCS 5/2-1117 (West 2012)). We find no legal basis in the Browder defendants' claim that Rodriguez is an intentional tortfeasor, as alleged in their counterclaim.

¶ 17    We also reject the Browder defendants' argument because their counterclaim is irrelevant to the determination of good faith in this case. The Browder defendants conceded in the trial court that their counterclaim constitutes an independent cause of action, a stand-alone claim. If a codefendant brings a third-party action against another codefendant under a different theory of liability, the basis for the contributor's liability still rests on his liability to the original plaintiff. As the appellate court correctly determined, "because the Browder co-defendants' counterclaims alleging intentional conduct are separate and independent causes of action, they do not change the nature of Antonicelli's complaint, which alleged only negligent conduct." 2017 IL App (1st) 153532-U, ¶ 25; see also, *Wilson v. Tromly*, 404 Ill. 307, 309-10 (1949) ("A counterclaim is an independent cause of action."); *Health Cost Controls v. Sevilla*, 307 Ill. App. 3d 582, 589 (1999) (a counterclaim is "an independent cause of action, separate from a

complaint"). Antonicelli alleged in her amended complaint that Rodriguez and all other defendants engaged in negligent conduct, not intentional conduct. The Browder defendants' counterclaim did not change the nature of Antonicelli's cause of action.

¶ 18 Here, the Browder defendants were subject to liability as alleged joint tortfeasors at the time of Antonicelli's injury. The Contribution Act provides a remedy for a joint tortfeasor to seek contribution against fellow joint tortfeasors who have not paid their *pro rata* share of the common liability. 740 ILCS 100/2 (West 2012). Two or more persons are jointly and severally liable under the circumstances "creating primary accountability, directly produc[ing] a single, indivisible injury by their concurrent negligence." *Storen v. City of Chicago*, 373 Ill. 530, 533 (1940). In essence, "[t]he existence of a single, indivisible injury is necessary to establish that multiple defendants are jointly and severally liable." *Sakellariadis v. Campbell*, 391 Ill. App. 3d 795, 801 (2009). This is true regardless of whether the defendants acted in concert or without a common purpose or duty. *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d 429, 438 (1992).

¶ 19 Whether a person is subject to liability in tort for purposes of the Contribution Act is determined at the time of the injury. *Doyle v. Rhodes*, 101 Ill. 2d 1, 10-11 (1984). In this case, Antonicelli suffered injuries as a result of a multivehicle accident where all of the defendants were drivers or employers of defendant drivers. Antonicelli's indivisible bodily injury is allegedly the result of all defendants' actions even though they did not act in concert. The Browder defendants were thus subject to liability in tort at the time of the injury. This is precisely the situation where the Contribution Act is applicable to joint tortfeasors.

¶ 20 We conclude that the trial and appellate courts properly disregarded the Browder defendants' counterclaim alleging that Rodriguez behaved intentionally. We therefore need not address the Browder defendants' contention that a trial court may not make a finding of good faith in favor of an intentional tortfeasor. We now turn to whether the trial court erred in its good-faith settlement determination in this case.

¶ 21 The Browder defendants argue that the trial court erred in entering a finding of good faith because it failed to consider their rights under section 2-1117 of the Code. We find no merit to this argument.

¶ 22 Section 2-1117 of the Code provides:

"Except as provided in section 2-1118, in actions on account of bodily injury or death or physical damage to property, based on negligence or product liability based on strict tort liability, all defendants found liable are jointly and severally liable for plaintiff's past and future medically related expenses. Any defendant whose fault, as determined by the trier of fact, is less than 25% of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third party defendant except the plaintiff's employer, shall be severally liable for all other damages. Any defendant whose fault, as determined by the trier of fact, is 25% or greater of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third party defendants except the plaintiff's employer, shall be jointly and severally liable for all other damages." 735 ILCS 5/2-1117 (West 2012).

¶ 23 "[W]hether a settlement satisfies the good-faith requirement as contemplated by the Contribution Act is a matter left to the discretion of the trial court based upon the court's consideration of the totality of the circumstances." *Johnson*, 203 Ill. 2d at 135. We review a

determination of good faith for an abuse of discretion. *Dubina*, 197 Ill. 2d at 191-92. The burden of proving the absence of good faith is on the party challenging the settlement. *Johnson*, 203 Ill. 2d at 133. There is no "single precise formula for determining what constitutes 'good faith' within the meaning of the Contribution Act that would be applicable in every case." *Johnson*, 203 Ill. 2d at 134. If it is shown, however, that the settlement parties engaged in wrongful conduct, collusion, or fraud, a settlement will not be found to be made in good faith. *Johnson*, 203 Ill. 2d at 134. Moreover, a settlement agreement will not satisfy the requirement of good faith when it conflicts with the terms of the Contribution Act or is inconsistent with the important public policies sought to be promoted by the Contribution Act. *Johnson*, 203 Ill. 2d at 134.

¶ 24    The settling parties have the initial burden of making a preliminary showing of good faith under the Contribution Act. *Johnson*, 203 Ill. 2d at 132. This initial burden is met with proof of a legally valid settlement agreement. *Johnson*, 203 Ill. 2d at 132. The nonsettling defendants must then prove the absence of good faith by a preponderance of the evidence. *Johnson*, 203 Ill. 2d at 133. Again, a finding of good faith requires the court to balance two important public policies: (1) to encourage settlements and (2) to promote the equitable apportionment of damages among tortfeasors. *Johnson*, 203 Ill. 2d at 133 (citing *Dubina*, 197 Ill. 2d at 193-94, and *Babb*, 162 Ill. 2d at 171). Nonsettling defendants may offer proof that the settling parties engaged in wrongful conduct, collusion, or fraud to establish an absence of good faith. *Babb*, 162 Ill. 2d at 162.

¶ 25    The trial court's finding that the settlement in this case was made in good faith is a matter within that court's discretion. *Babb*, 162 Ill. 2d at 162. "Whether a settlement was made in good faith is a matter to be determined by the trial court after consideration of all of the surrounding circumstances." *Dubina*, 197 Ill. 2d at 191. "This totality-of-the-circumstances approach allows trial courts to give effect to the strong public policy favoring the peaceful settlement of claims, and at the same time allows trial courts to be on guard for any evidence of unfair dealing, collusion, or wrongful conduct by the settling parties." *Dubina*, 197 Ill. 2d at 191. We will reverse the trial court's finding of good faith only if the trial court abused its discretion. *Babb*, 162 Ill. 2d at 162.

¶ 26    Here, Rodriguez negotiated a settlement with Antonicelli for $20,000, his insurance policy limits, in exchange for a full release of any and all claims against him. The Browder defendants did not allege or present any evidence that Rodriguez and Antonicelli engaged in any wrongful conduct, collusion, or fraud. The record indicates that Rodriguez's petition for a finding of good faith was fully briefed by the parties. At a hearing on the proposed settlement, the trial court considered the Browder defendants' arguments against a finding of good faith, including their apportionment of fault argument under section 2-1117. The court also considered the problem that Rodriguez's insurance company would have to pay its attorneys to continue in the case, despite having already offered the $20,000 policy limit. In granting Rodriguez's motion for a finding of a good-faith settlement and dismissing Rodriguez from the case, the trial court specifically provided that the "non-settling Defendants have the right of credit of $20,000 as against any future judgment in these proceedings in favor of Plaintiff." Thus, the court included a setoff of the settlement amount in favor of the nonsettling Browder defendants, pursuant to section 2(c) of the Contribution Act (740 ILCS 100/2(c) (West 2012)).

¶ 27    We find no merit in the Browder defendants' argument that the trial court failed to consider their rights under section 2-1117 of the Code. This court has held "that a separate evidentiary hearing is not required and that a trial court need not decide the merits of the tort case or rule on the relative liabilities of the parties before making a good-faith determination. [Citations.] A court is capable of ruling on 'good faith' without a precise determination of the overall damages suffered by the plaintiff and the settling tortfeasor's proportionate liability." *Johnson*, 203 Ill. 2d at 139. We reiterate that the Contribution Act ensures equitable apportionment of damages among tortfeasors by creating a right of contribution among defendants and " 'by providing that the amount that the plaintiff recovers on a claim against any other nonsettling tortfeasors will be reduced or set off by the amount stated in the settlement agreement.' " *BHI Corp.*, 214 Ill. 2d at 365 (quoting *Babb*, 162 Ill. 2d at 171, citing 740 ILCS 100/2(b), (c) (West 1992)). The only limitation the Contribution Act places on a settlement is that the settlement be in "good faith." 740 ILCS 100/2(c) (West 2012); *Johnson*, 203 Ill. 2d at 128; *Dubina*, 197 Ill. 2d at 191; *Babb*, 162 Ill. 2d at 161.

¶ 28    Nevertheless, the Browder defendants assert that, from a procedural standpoint, section 2-1117 of the Code comes into play before the Contribution Act to determine the liability of minimally culpable defendants. Specifically, the Browder defendants assert that a trial court must consider "the equitable apportionment of damages among tortfeasors in arriving at a good faith finding." According to the Browder defendants:

> "A non-settling defendant, when faced with a Motion for Good Faith Finding, should have the opportunity to present evidence to support an argument that there is likelihood at trial that a jury will find the non-settling defendant to be less than 25% at fault. Assuming that the non-settling Defendant meets his burden of proof on this issue by a preponderance of evidence, the Court can deny the Motion for Good Faith Finding without prejudice. The Plaintiff, if he so chooses, can accept the settlement offer and release the settling defendant, or enter into a covenant not to execute a judgment. By doing so, the Plaintiff can receive the settlement proceeds before trial. Assuming the jury finds in favor of the Plaintiff, the issue of whether the settlement was in good faith can be renewed in a post-trial motion at the same time that the non-settling defendant can seek a reduction in damages under 2-1117 if he is found to be less than 25% at fault."

¶ 29    The Browder defendants rely on *Unzicker v. Kraft Food Ingredients Corp.*, 203 Ill. 2d 64 (2002), to support their argument that a court must consider section 2-1117 before entering a finding of good faith. In *Unzicker*, the plaintiffs argued that the Contribution Act, providing a plaintiff the right to recover damages from any responsible defendant, conflicts with section 2-1117, eliminating a plaintiff's ability to recover the full amount of nonmedical damages from any defendant found to be less than 25% responsible for the plaintiff's injuries. This court disagreed, finding that the statutory provisions of the Contribution Act and section 2-1117 were not in conflict. We explained that "[s]ection 2-1117 comes into play before the Contribution Act and is applied to determine liability. Any defendant who pays damages in an amount greater than his or her proportionate share of fault can then seek contribution under the Contribution Act." *Unzicker*, 203 Ill. 2d at 80.

¶ 30    We disagree with the Browder defendants that *Unzicker* requires a trial court to first consider a nonsettling defendant's rights under section 2-1117 before making a finding of good

faith under the Contribution Act. *Unzicker* involved the apportionment of fault between defendants after trial and not in the context of a pretrial settlement agreement. *Unzicker* did not hold that a trial court must consider how section 2-1117 affects other codefendants' liability before entering a finding of a good-faith settlement by one defendant.

¶ 31    As aptly noted by the appellate court, "requiring a trial court to make a determination as to each defendant's fault before finding that a settlement agreement was entered into in good faith would be impracticable and would defeat the purpose of section 2 of the Contribution Act of encouraging compromise and settlement in the absence of bad faith, fraud, or collusion." 2017 IL App (1st) 153532-U, ¶ 31. Indeed, the Browder defendants conceded as much during oral argument before this court.

¶ 32    We conclude that the Browder defendants failed to meet their burden in showing that the settlement between Rodriguez and Antonicelli was not made in good faith. Accordingly, we hold that the trial court did not abuse its discretion when it granted Rodriguez's motion for a good-faith settlement finding under section 2 of the Contribution Act. 2017 IL App (1st) 153532-U, ¶ 31.

¶ 33                              CONCLUSION

¶ 34    We find that the trial court did not abuse its discretion when it found the settlement between Rodriguez and Antonicelli satisfied the good-faith settlement requirement of the Contribution Act. For these reasons, we affirm the judgment of the appellate court upholding the good-faith settlement ruling made by the trial court.

¶ 35    Affirmed.

¶ 36    JUSTICE THOMAS, specially concurring:

¶ 37    Courts are often reminded that they are not called upon to legislate. The legislature is bound by no such constraints. The time is long overdue for the legislature to act. As this case perfectly illustrates, in the nearly 10 years since the decision in *Ready v. United/Goedecke Services, Inc.*, 232 Ill. 2d 369 (2008) (*Ready I*), courts continue to struggle to reconcile good-faith settlements with the public policy goals of the Contribution Act. This case provides the legislature with another opportunity to clarify whether it intended the phrase "the defendants sued by the plaintiff" in section 2-1117 of the Code (735 ILCS 5/2-1117 (West 2012)) to include settling defendants, such that settling defendants should appear on a verdict form for purposes of apportionment of fault between defendants. In *Ready I*, the members of this court took no less than three distinct and contrary positions on this question, with no single position garnering a majority. It is time for the legislature to step in and answer this question definitively once and for all.

¶ 38    JUSTICE GARMAN, specially concurring:

¶ 39    For the reasons set forth in my dissenting opinion in *Ready v. United/Goedecke Services, Inc.*, 232 Ill. 2d 369, 390-407 (2008) (Garman, J., dissenting, joined by Karmeier, J.) (*Ready I*), *Ready I* was wrongly decided. The Contribution Act seeks to promote two public policy goals—the encouragement of settlements and the equitable apportionment of damages among tortfeasors. *Johnson v. United Airlines*, 203 Ill. 2d 121, 133 (2003). Had *Ready I* properly held

- 8 -

that, under section 2-1117, settling defendants are to be included on the verdict form for what would be a truthful apportionment of relative fault, both policy goals would be served. However, *Ready I*'s holding favors one policy goal and sacrifices the other. It is of no surprise that nonsettling defendants now resort to challenging the finding of good faith entered in favor of Rodriguez as a last-ditch effort to ensure that the apportionment of fault is equitable.

¶ 40    CHIEF JUSTICE KARMEIER, dissenting:

¶ 41    Unfortunately, because of precedent established by a narrow vote of this court in 2008, a pretrial finding of good faith in this context[1] produces significant procedural ripples that more broadly impact the fair apportionment of fault under section 2-1117 of the Code. In my view, that impact must be considered in determining whether, under the totality of *these* circumstances, a finding of good faith should be entered prior to trial and section 2-1117 apportionment.

¶ 42    As the majority notes, "the Browder defendants admit that their sole purpose for objecting to this settlement is to keep Rodriguez on the jury verdict form for an apportionment of joint and several liability under section 2-1117 of the Code." *Supra* ¶ 16. Indeed, because of this court's erroneous analysis in *Ready v. United/Goedecke Services, Inc.*, 232 Ill. 2d 369 (2008) (*Ready I*), they have no other recourse than to challenge the finding of good faith if they are to get Rodriguez—obviously the principal actor in the infliction of plaintiff's injuries—on a verdict form for a fair apportionment of liability. Although *Ready I* is clearly the cause of inequity here, given the facts of this case, I would, as one appellate justice has advocated under similar circumstances (see *Miranda v. Walsh Group, Ltd.*, 2013 IL App (1st) 122674, ¶¶ 20-24 (Delort, J., dissenting)), accord greater weight to considerations of the "equitable apportionment of damages" in the good-faith balancing equation. Doing so, I would find—accounting for the two important public policies the Contribution Act seeks to promote *and* for the plurality's contorted construction of the plain language of section 2-1117 in *Ready I*—that a good-faith finding was not appropriate in this case when all the relevant factors are properly considered. Therefore, I respectfully dissent.

¶ 43    In *Ready I*, a nonsettling defendant argued that the trial court erred by failing to include the settling defendants on the verdict form so that the jury could determine their share of fault, if any, for the fatal accident. The appellate court agreed, concluding that, under section 2-1117 (735 ILCS 5/2-1117 (West 1998)), a nonsettling defendant's fault should be assessed relative to the fault of all defendants, including settling defendants. See *Ready v. United/Goedecke Services, Inc.*, 367 Ill. App. 3d 272, 279 (2006). On appeal from that appellate decision, this court identified the central issue as "whether settled tortfeasors are 'defendants sued by the plaintiff' within the meaning of section 2-1117 of the Code." *Ready I*, 232 Ill. 2d at 374. The plurality, reversing the judgment of the appellate court, determined that settling defendants are *not* "defendants sued by the plaintiff." *Id.* at 378, 382. In so concluding, the plurality stated: "[W]e disagree with the appellate court's holding that, under section 2-1117, a remaining defendant's culpability must be assessed relative to the culpability of all defendants, including settling defendants." *Id.* at 383.

---

[1]A matter of no practical consequence to Rodriguez, but one of convenience for his insurance company.

¶ 44       I joined in Justice Garman's dissent. In brief, the dissent pointed out the grammatical reality that the phrase "defendants sued by the plaintiff" uses a past tense verb, obviously referring to those defendants initially sued by plaintiff, irrespective of whether they still remain in the action (*id.* at 390-95 (Garman, J., dissenting, joined by Karmeier, J.)),[2] and went on to otherwise address the construction of the statute (*id.* at 395-405). In the end, Justice Garman observed that "[a]llocating fault among the plaintiff and all defendants sued by the plaintiff is not only required by the plain language of section 2-1117, it is entirely consistent with the legislative goal of protecting minimally responsible tortfeasors from excessive liability." *Id.* at 405.[3] She found that the result reached by the plurality was "inimical" (*id.*) to section 2-1117's goals for at least three reasons. First, she observed, "if fault is allocated among a plaintiff and all of the defendants sued, the plaintiff may be more likely to be made whole because his own degree of fault may be reduced." *Id.* at 406. Second, Justice Garman expressed the concern that the plurality's holding might actually *discourage* settlements:

> "[T]he plurality's reading invites future plaintiffs to reject reasonable settlement offers from minimally responsible defendants with 'deep pockets' in an effort to keep such defendants in the case until judgment. Under the plurality's reading of section 2-1117, such a minimally responsible defendant will not be allowed to present evidence of other defendants' shares of fault or to have the jury apportion fault among all of the parties 'who might have been responsible for the plaintiff's injuries.' *Unzicker* [*v. Kraft Food Ingredients Corp.*], 203 Ill. 2d [64, 79 (2002)]. A defendant who is a mere 1% at fault for an injury will be liable for the entire amount of the judgment, less the amount of the settlements with more culpable defendants. Although such a result would fully compensate the injured plaintiff, it would do so by imposing excessive liability on a minimally responsible defendant. Such a result is not consistent with the public policy of this state as expressed by the legislature." *Id.* at 406-07.

Third, Justice Garman questioned the practical aspects of the plurality's holding in the context of an actual trial, noting that it is not uncommon for one of several defendants to reach a settlement with the plaintiff during trial or even while the jury is deliberating. What happens then? See *id.* at 407.

¶ 45       In sum, she concluded that "the plain language employed in section 2-1117 reflects the balance struck by the legislature between the potentially competing goals of full compensation to injured plaintiffs and fair imposition of liability upon defendants." *Id.* And the phrase "defendants sued by the plaintiff" means *all* the defendants who were sued by plaintiff. *Id.* That was, and is, my view as well.

¶ 46       The case again came before this court—after our remand—in *Ready v. United/Goedecke Services, Inc.*, 238 Ill. 2d 582 (2010) (*Ready II*). In that case, the majority determined that the trial court had "erred in preventing the nonsettling defendant from presenting evidence in support of its sole proximate cause defense," *i.e.*, evidence that "would have tended to show that the settling defendants' conduct was the sole proximate cause of the accident." *Id.* at

---

[2]At page 394 of the opinion Justice Garman offers common examples of usage that anyone can understand.

[3]This court, in *Unzicker*, made clear that the "legislative intent behind section 2-1117 is that minimally responsible defendants should not have to pay entire damage awards." *Unzicker v. Kraft Food Ingredients Corp.*, 203 Ill. 2d 64, 78 (2002).

591-92. Commensurate with that determination, the majority found that the trial court had erred in "refusing to give the second paragraph of IPI Civil (2000) No. 12.04." *Id.* at 592, 594. That paragraph, in an instruction addressing concurrent negligence other than a defendant's—and which advises the jury, in its first paragraph, that "it is not a defense that some third person who is not a party to the suit may also have been to blame" for plaintiff's injuries—cautions that the verdict *should* be for the defendant if "the sole proximate cause of injury to the plaintiff was the conduct of some person other than the defendant." Illinois Pattern Jury Instructions, Civil, No. 12.04 (2000) (hereinafter IPI Civil (2000) No. 12.04). Despite finding error, the majority deemed the error harmless. *Ready II*, 238 Ill. 2d at 592.

¶ 47    Justice Garman filed a special concurrence—in which I joined—reiterating her belief that *Ready I* was wrongly decided: "As I stated in my dissent in *Ready I*, the plain language of section 2-1117 requires that fault must be allocated among all defendants, settling and nonsettling alike. This reading of the statute comports with and furthers the legislature's 'goal of protecting minimally responsible tortfeasors from excessive liability.' *Ready*, 232 Ill. 2d at 405 (Garman, J., dissenting, joined by Karmeier, J.)." *Id.* at 596 (Garman, J., specially concurring, joined by Karmeier, J.). Justice Garman noted that the plurality's interpretation of section 2-1117 in *Ready I* "rewards settling defendants, no matter the degree of their culpability, and punishes nonsettling defendants" "who may have a lesser degree of fault than the settling defendants." *Id.* Justice Garman concluded: "As I stated in my dissent in *Ready I*, the plurality's reading of section 2-1117 upsets the balance struck by the legislature between the goals of full compensation for injured plaintiffs and imposition of liability on defendants commensurate with their fault. That erroneous reading of the statute has had and will continue to have unfortunate consequences for both plaintiffs and defendants." *Id.* at 597.

¶ 48    As the appellate court observed in *Ramirez v. FCL Builders, Inc.*, 2014 IL App (1st) 123663, ¶¶ 186-87 (citing cases), after this court's decision in *Ready I*, appellate courts and parties have uniformly interpreted *Ready I* as preventing settling defendants from appearing on a verdict form for the apportionment of fault. In *Denton v. Universal Am-Can, Ltd.*, 2015 IL App (1st) 132905, the appellate court addressed a choice-of-law question that highlighted the significant differences in how Illinois and Indiana allocate fault among joint tortfeasors, noting that a principal difference is, pursuant to this court's decision in *Ready I*, in Illinois "tortfeasors who have settled in good faith and who have been dismissed from the lawsuit are exempt from section 2-1117 *** and therefore may not be apportioned fault by the trier of fact." *Id.* ¶ 12. The appellate court, citing directives contained in the Illinois Pattern Jury Instructions, stated that a "trier of fact can only consider the fault of settling tortfeasors if there is evidence to suggest fault by the settling tortfeasors *and* if plaintiff is allegedly contributorily negligent. Illinois Pattern Jury Instructions, Civil, No. B45.03.A (2012) (citing *Bofman v. Material Service Corp.*, 125 Ill. App. 3d 1053, 1060 (1984))." (Emphasis added.) *Id.*[4]

---

[4]"If there is no issue of contributory negligence, the Committee recommends against including non-parties on the verdict form. *Ready*, *supra* at 385 [citation]." Illinois Pattern Jury Instructions, Civil, No. B45.03.A, cmt. 1 (rev. June 1, 2012). Though the Committee's position in that respect is dictated by *Ready I*, it seems self-evident that the fairest and most accurate assessment of proportionate fault can only be achieved by including *everyone* involved in the accident on the verdict form. The Committee's decision to follow appellate authority when contributory negligence is also at issue—including *everyone*, even settling defendants on the verdict form—acknowledges the obvious. I would note that

- 11 -

¶ 49        Due to the inequity that may result from this court's decision in *Ready I*—the "unfortunate consequences for both plaintiffs and defendants" that Justice Garman referenced in *Ready II*—nonsettling defendants (in this case and *Denton*, for example) have tried to avoid the consequences of *Ready I* by opposing a determination of good faith—in cases where they otherwise might not—and some jurists have taken a broader view of what constitutes a "good-faith" settlement.

¶ 50        In *Cellini v. Village of Gurnee*, 403 Ill. App. 3d 26, 37 (2010), during a hearing on a motion for finding of good faith between settling parties, a nonsettling defendant argued, unsuccessfully, though with basis, "that in light of our supreme court's decision in *Ready v. United/Goedecke Services, Inc.*, which held that a settling tortfeasor was not a 'defendant' considered in apportioning fault and would not be listed on the verdict form, a nonsettling defendant *** would be 'left holding the bag.' "

¶ 51        In *Motton v. Petrie*, No. 14 C 2895, 2015 WL 1510412 (N.D. Ill. Mar. 30, 2015), the plaintiff was a passenger in a car driven by her husband. She was severely injured when their vehicle struck a tractor-trailer parked on the side of the road near an intersection. Plaintiff's medical expenses alone came to roughly $300,000. She settled with her husband's insurance company for $100,000, the alleged policy limit, and proceeded against the truck driver and his employer. Those defendants denied liability and filed a third-party complaint against plaintiff's husband, seeking contribution. Plaintiff's husband responded by filing a motion claiming that he was excluded from liability as a matter of law pursuant to the Illinois Joint Tortfeasor Contribution Act, which provides that a joint tortfeasor who settles in good faith with a plaintiff is immune from contribution liability. The court then held an evidentiary hearing, which led to the following uncontroverted revelations: (1) the truck driver's tractor-trailer was parked on the side of the road and therefore did not obstruct the path of the vehicle driven by plaintiff's husband, and (2) her husband rear-ended the tractor-trailer while he was looking down at the radio. *Id.* at *1.

¶ 52        The federal court determined "the totality of circumstances does not support a finding of good faith." *Id.* at *2. In so finding, the court had this to say:

> "Ultimately, the Court is unwilling to hold that the settlement was made in good faith because it plausibly conflicts with [the] Contribution Act's underlying policies. The Act seeks to promote both the encouragement of settlements and the equitable apportionment of damages among tortfeasors. *See In re Babb*, 642 N.E.2d 1195, 1207 (Ill.1994). A finding of good faith must therefore strike a balance between those policies. *Associated Aviation Underwriters, Inc. v. Aon Corp.*, 800 N.E.2d 424, 433 *** (Ill.2003). In that respect, a settlement is considered not in good faith if its practical effect is to shift a disproportionally large and inequitable portion of the settling defendant's liability to the shoulders of another. *Stickler v. American Augers, Inc.*, 757 N.E.2d 573, 578 (Ill.App.Ct.2001). And a finding of good faith here would do just that." *Id.* at *4.

---

including a defendant who has settled on the verdict form would not impair the rights of the settling defendant under the Contribution Act, but it *would* ensure that nonsettling defendants' rights are preserved under section 2-1117. The plurality decision in *Ready I* effectively—and unnecessarily—linked two separate considerations of apportionment and, in so doing, impaired the rights of nonsettling litigants to have comprehensive apportionment as envisioned by section 2-1117.

¶ 53     The court continued, indicating that this court's opinion in *Ready I* was a significant factor in its analysis:

"[T]he difference between the settlement and alleged damages ($100,000 vs. $1,300,000) compared to [plaintiff's husband's] potential fault is striking. Thus, while the Court is mindful that alleged damages do not necessarily reflect the amount recoverable at trial, it is clear that saddling Defendants with the majority of damages in this case would be inequitable. Moreover, a finding of good faith at this stage would prevent a jury from being able to apportion *any* fault to [plaintiff's husband] on the verdict form, which, given the developments at the evidentiary hearing, would be patently unjust. *See Ready v. United/Goedecke Svcs., Inc.*, 905 N.E.2d 725, 735 (Ill.2008); *Miranda v. Walsh Grp., Ltd.*, 997 N.E.2d 895, 901 (Ill.App.2013) (affirming that a 'settling defendant ... should not be named on the jury verdict form for the appropriation of fault.') As such, a finding of good faith would undermine the policies underlying the Contribution Act, and therefore [plaintiff's husband's] motion is denied." (Emphasis in original.) *Id.*

¶ 54     As noted at the outset, a similar analysis has been employed in a dissenting opinion in our appellate court. See *Miranda*, 2013 IL App (1st) 122674, ¶¶ 20-24 (Delort, J., dissenting). In *Miranda*—as may well be the case here—the settling defendant (Geans) was by far the most culpable party, the impaired driver who initiated the chain of events that resulted in plaintiff's injuries, the party who pled guilty to a felony. *Id.* ¶ 21. In *Miranda*—as here—the plaintiff entered into a settlement with that party for $20,000, the limit of that party's policy. *Id.* ¶ 3 (majority opinion).

¶ 55     In *Miranda*, on appeal, the nonsettling defendant, Walsh, argued that the circuit court abused its discretion by approving the settlement because it failed to consider the amount of the settlement in relation to the probability of recovery and Geans's potential legal liability. Walsh argued that the court's failure to do so contravened the purpose of the Contribution Act, *i.e.*, to encourage equitable apportionment of damages, because Walsh might be forced to absorb an unfair portion of the plaintiff's damages, far in excess of the $20,000 that Geans paid. Further, Walsh argued that it would suffer unjust prejudice if Geans's settlement was accepted because, after the settlement, Geans could not be named on the jury verdict form for purposes of apportioning fault. In that respect, citations were supplied to section 2-1117 of the Code and this court's decision in *Ready I*. *Id.* ¶ 8.

¶ 56     The appellate majority concluded that none of Walsh's arguments justified overturning the circuit court's ruling. *Id.* In so holding, the majority cited—as the majority does here—many of the analytical components that this court found pertinent in *Johnson v. United Airlines*, 203 Ill. 2d 121 (2003), a decision that predates *Ready I* by five years. *Miranda*, 2013 IL App (1st) 122674, ¶ 9. The appellate majority did not discuss the impact that *Ready I* has on the trial process in general and, in particular, the apportionment of fault at trial.

¶ 57     Neither did Justice Delort specifically reference *Ready I* in his dissent, but the shadow of *Ready I* is clearly looming in the background of his analysis, as is evinced by this observation:

"[M]oney—like water—always finds an outlet. If Walsh goes to trial by itself, the tragic facts could very well persuade the jury to award a large verdict. Geans' drop-in-the-bucket settlement takes her off the stage at the jury trial. *** That being the

- 13 -

case, the jury is highly unlikely to precisely and properly apportion Walsh's degree of fault *vis-à-vis* that of the absent Geans." *Id.* ¶ 21 (Delort, J., dissenting).

¶ 58    Given the circumstances—a minimal settlement amount from a highly culpable defendant, a nonsettling defendant with minimal fault if any, and a decisional bar (*Ready I*) to including the settling defendant on a verdict form for purposes of apportionment of fault between the two—Justice Delort concluded that "the amount of money that the victim would actually receive in hand from Geans is not, as she suggests, the predominant factor in the formula. The relative degree of fault is just as important, if not more so." *Id.* ¶ 23. Quoting from this court's opinion in *Johnson*, he noted that " 'the Contribution Act seeks to promote two important public policies—the encouragement of settlements and the equitable apportionment of damages among tortfeasors' " and " '[w]hen a court decides whether a settlement was negotiated in "good faith," it must strike a balance between these two policy considerations.' " *Id.* (quoting *Johnson*, 203 Ill. 2d at 133).

¶ 59    Justice Delort noted that one of the applicable factors—the one he obviously found predominant given the facts of the case—is whether the amount paid in settlement is within a reasonable range of the settlor's fair share of liability. He concluded: "Geans' $20,000 settlement is so microscopic in comparison to her just share of the million-dollar liability that it cannot possibly meet the good-faith test. Accordingly, I would find that the trial court abused its discretion and reverse the judgment below." *Id.* ¶ 24.

¶ 60    The similarities between *Miranda* and this case are striking—and no doubt these circumstances recur with some frequency. We have an irresponsible driver with minimal insurance coverage and little or no additional financial resources. Though that driver-defendant would appear to bear the lion's share of fault for the accident and plaintiff's injuries, in this circumstance, the plaintiff, given her severe, permanent injuries—injuries that necessitated numerous surgeries—has every incentive to get that defendant out of the way and proceed against a defendant who may bear considerably less fault but who has deeper pockets. It is in her interest—given this court's decision in *Ready I*—to be one-on-one with the nonsettling defendants at trial.[5] The $20,000 that the insurance company owes on behalf of the clearly responsible driver—likely a small fraction of plaintiff's damages—would be available now *or* later at trial—though, as the majority notes, the attorneys for the insurance company, who are obligated to defend Rodriguez, would prefer not to waste any more time with this case, a factor the trial court considered in its determination of good faith. *Supra* ¶ 26. However, given the reality of *Ready I*, it matters very much to the Browder defendants whether Rodriguez appears on that verdict form, because if they appear alone on the other side of the trial ledger from the—at this point—seemingly faultless plaintiff and her driver, and if the Browder defendants are unable to convince a jury that Rodriguez's conduct was the *sole* proximate cause of the accident, the Browder defendants, because of the settlement with Rodriguez—and the plurality decision in *Ready I*—will be exposed as the *only* parties against

_____

[5]I would note, in passing, that the legislature's inclusion of the phrase "any third party defendant who could have been sued by the plaintiff" in the section 2-1117 equation clearly indicates that the legislature did not intend for the plaintiff to control who is included in section 2-1117 apportionment.

- 14 -

whom the jury can assess fault to compensate the seriously injured plaintiff.[6] What are the possibilities there?

¶ 61    Perhaps the Browder defendants *will* rely upon a sole-proximate-cause defense, which would, at least, allow them to address the conduct of Rodriguez. In that respect, as the appellate court noted, the Illinois State Police concluded that Rodriguez's improper lane usage and other traffic violations caused the accident. Rodriguez acknowledged he was at fault, but he claimed to have no independent recollection of the accident because of brain injuries he suffered in the collision. Rodriguez pled guilty to a Class 4 felony of aggravated driving under the influence of drugs and received a sentence of seven years' imprisonment. 2017 IL App (1st) 153532-U, ¶ 7. The traffic crash reconstruction report stated that "Unit #2" (the vehicle in which plaintiff was a passenger) sustained "extensive contact damage to the front of the vehicle due to contact with Unit #1" (Rodriguez's vehicle) and only "minor contact damage to the passenger side door area due to contact with Unit #3" (the Browder vehicle). Nonetheless, there *was* contact between the vehicle carrying plaintiff and the Browder vehicle. If the Browder defendants do not prevail on a sole-proximate-cause defense, then the first paragraph of IPI Civil (2000) No. 12.04 will advise jurors that "it is not a defense that some third person who is not a party to the suit may also have been to blame." The Browder defendants will be the lone defendants when it comes time for the jury to assess fault on the verdict form—because of *Ready I.*

¶ 62    As this court acknowledged in *Johnson*, in determining whether a settlement has been made in good faith, a court must strike a balance between two—I repeat *two*—important public policies: the encouragement of settlements *and* the equitable apportionment of damages among tortfeasors. *Johnson*, 203 Ill. 2d at 133. What constitutes "good faith" under the Act is not defined by the statute. *Dubina v. Mesirow Realty Development, Inc.*, 197 Ill. 2d 185, 191 (2001). Quoting *Johnson*, the majority acknowledges there is no " 'single precise formula for determining what constitutes "good faith" within the meaning of the Contribution Act that would be applicable in every case.' " *Supra* ¶ 23 (quoting *Johnson*, 203 Ill. 2d at 134). The majority focuses only on the absence of wrongful conduct, collusion, or fraud (*supra* ¶ 23); however, in the broadest sense, both *Johnson* and *Dubina*—again pre-*Ready* decisions—reaffirmed the principle that a settlement agreement which conflicts with the terms of the Contribution Act and/or is not consistent with the policies underlying the Contribution Act cannot satisfy the good-faith requirement. *Johnson*, 203 Ill. 2d at 134-35; *Dubina*, 197 Ill. 2d at 192. The ramifications of a settlement on other policy goals the legislature has sought to further—such as equitable fault apportionment (a goal of both the Contribution Act and section 2-1117)—should be and, I believe, are as important as whether there was wrongful conduct or collusion, however we choose to define those terms.

---

        [6]In *Yoder v. Ferguson*, 381 Ill. App. 3d 353, 374, 379 (2008)—a pre-*Ready I* decision—a party argued that the circuit court's ruling, "exclud[ing] settling defendants from the fault allocation forms," effectively created two different classes of nonsettling defendants: those whose fault is measured against the total fault of all tortfeasors and those measured only against nonsettling tortfeasors. Irrespective of whether there are constitutional implications in that dichotomy, I *do* believe that the plurality in *Ready I* created those two classes of defendants—those who are afforded the protection of a comprehensive determination of liability pursuant to section 2-1117 and those who are not—when no such distinction was ever intended by the legislature.

¶ 63    In my view, given the totality of *these* circumstances and accounting for the impact of *Ready I*, the balance clearly weighs in favor of the second policy goal of the good-faith equation—the equitable apportionment of damages—and that militates against a finding of good faith at this juncture.

¶ 64    I would note that the Act's provisions would seem unnecessary to "encourage" Rodriguez to settle with the plaintiff. Protection from a contribution claim and limitation of his monetary liability were insignificant considerations for him—as he had nothing to contribute anyway and he was on his way to prison. Moreover, he apparently had no defense to assert. His liability—according to the evidence in the record and assertions therein—is evidently a *fait accompli* as far as these parties are concerned. In short, he had no negotiating leverage and little or nothing to lose. His insurance company is obligated to pay the $20,000 now *or* later. That money is not going anywhere. So there is no need to settle that pretrial. And Rodriguez is not going anywhere either—physically, figuratively, or legally. He is a dead-in-the-water defendant. His presence in this litigation is nominal. For "his" part, the real incentive to terminate his participation in this litigation, as the majority opinion acknowledges (*supra* ¶ 26), lies with the attorneys for his insurance company, who are required to represent him.

¶ 65    Since the limited amount of money available to the plaintiff via Rodriguez was not going anywhere and Rodriguez had no viable defense with which plaintiff had to contend, there was no pressing need for *her* to settle with him either. But, as noted, settling with him did one critical thing because of *Ready I*: it meant that Rodriguez would not appear on the verdict form for purposes of comprehensive apportionment of fault. That is really all a pretrial settlement, sanctioned by a finding of good faith, does under *these* circumstances.

¶ 66    In *Babb*, this court recognized that it is appropriate to consider how settlement between a plaintiff and a single tortfeasor furthers—or not—"the legislature's intent to encourage settlement of the *entire* litigation." (Emphasis in original.) *In re Guardianship of Babb*, 162 Ill. 2d 153, 178-79 (1994). It seems to me that entering a good-faith finding in this scenario—a highly culpable settling defendant, with little or no resources and no negotiating leverage, and much less culpable defendants with more significant resources—makes it *more* likely (given *Ready I*) that the plaintiff, with the settling defendant out of the apportionment picture, will take the less culpable defendants to trial in hopes that the jury verdict will result in an award in excess of those defendants' actual liability. It does not have to be that way. It should not be that way.[7] Indeed, there is no "single precise formula for determining what constitutes 'good faith' within the meaning of the Contribution Act that would be applicable in every case." *Johnson*, 203 Ill. 2d at 134. In this recurring fact pattern, and in light of this court's holding in *Ready I*, I would find that a circuit court abuses its discretion in entering a finding of good faith, insofar

---

[7]Including the settling defendant on the verdict form solves the problem without contravening the aims of the Contribution Act or impairing any of the protections afforded a settling defendant. Moreover, if the goal of the legislature, in enacting section 2-1117, was the fair apportionment of fault among *all* the parties involved—and I believe it was—then it is hard to argue that excluding the most culpable defendants from jury apportionment somehow furthers that end and is consistent with the legislature's intent.

- 16 -

as that finding would remove the settling defendant from a verdict form for purposes of apportionment of fault.[8]

¶ 67　　　Surely, we can consider, in the good-faith equation, what a pretrial settlement, based upon a finding of good faith, does in the overall apportionment of fault—whether it furthers or detracts from fair apportionment of fault among all concerned. What basis is there—be it fairness or reason—to argue that a fairer, more equitable apportionment of fault can be accomplished with the principal actor in the accident absent from the verdict form by which the jury will determine percentages of responsibility? The term "good faith" in this context is a phrase that *the courts* define and to which we attach consequences. Here, because of *Ready I*, it has important consequences for a nonsettling defendant, and those consequences have a very real potential to distort the jury's apportionment of liability. I am convinced that the holding of *Ready I* does not reflect the intent of the legislature to provide for fair apportionment of liability among tortfeasors or an equitable, comprehensive apportionment of fault by the trier of fact.[9] A broader construction of "good faith" in this context—a matter admittedly within our authority—could rectify the inequity wrought by *Ready I*.

¶ 68　　　In closing, I feel compelled to point out that the majority's decision in this case should cause any motorist—who is unexpectedly confronted with a spin-out collision (initiated here by an impaired driver of inadequate means)—concern over what *their* ultimate liability might be under these circumstances. The majority's holding here, in conjunction with *Ready I*, is not mere abstract discussion.

---

[8]It is my hope that the error of *Ready I* will someday be rectified by this court or the legislature. Courts are, indeed, not called upon to legislate, but they *are* empowered to rectify their own errors, where possible, so as to provide for a just result. Beyond the unique circumstances that specific cases may provide, this court has, where appropriate, determined that the principle of *stare decisis* is, itself, no impediment to correction of analytical error. For example, in *People v. Sharpe*, 216 Ill. 2d 481, 520-21 (2005), this court did not hesitate to depart from *stare decisis* and abandon an analysis based upon decisions it considered "badly reasoned" and "prejudicial to public interests." See also *People v. Boeckman*, 238 Ill. 2d 1, 18-31 (2010) (Garman, J., specially concurring, joined by Thomas, J.) (arguing that *People v. Linder*, 127 Ill. 2d 174 (1989), should be overruled—though the parties did not request that result—because of *Linder*'s statutory misinterpretation). The plurality decision in *Ready I* effectively eviscerates the section 2-1117 protection intended by the legislature—safeguards for "minimally responsible defendants," as this court recognized in *Unzicker*. See *Unzicker*, 203 Ill. 2d at 78. We have here the opportunity, given the facts of *this* case, to interpret two obviously related statutes in such a way as to give effect to the legislature's intent, as this court ascertained it in *Unzicker*, without undermining the goals of the Contribution Act.

[9]The legislature tried to make plain, in the Tort Reform Act of 1995, that there should be apportionment of fault among *all* tortfeasors whose fault was a proximate cause of injury *regardless of whether that person may have settled with the plaintiff* (see Pub. Act 89-7 (eff. Mar. 9, 1995)), and this court held that provision unconstitutional, along with the rest of the Tort Reform Act, in *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997).